□ ORIGINAL

ALICIA A.G. LIMTIACO
United States Attorney
STEPHEN F. LEON GUERRERO
Assistant U.S. Attorney
BELINDA ALCANTARA
Assistant U.S. Attorney
Sirena Plaza, Suite 500
108 Hernan Cortez Avenue
Hagåtña, Guam 96910
PHONE: (671) 472-7332
FAX: (671) 472-7215

Attorneys for the United States of America

FILED
DISTRICT COURT OF GUAM

AUG 08 2016

JEANNE G. QUINATA
CLERK OF COURT

IN THE UNITED STATES DISTRICT COURT

FOR THE TERRITORY OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>GUAM CONSTRUCTION COMPANY,<br><br>Defendant. | CRIMINAL CASE N0. 14-00034<br><br><br>**PLEA AGREEMENT** |

The United States and Defendant, GUAM CONSTRUCTION COMPANY, enter into the following plea agreement:

**Charge and Penalties**

1. Defendant agrees to enter a guilty plea to Count 1 of the indictment charging it with Conspiracy to Commit Visa Fraud in violation of 18 U.S.C. § 371. The United States agrees to move to dismiss the remaining counts of the indictment upon sentencing.

2. Defendant understands and acknowledges the following:

1

(a) 18 U.S.C. §3551(c) sets forth that an organization found guilty of a violation of 18 U.S.C. § 371 shall be sentenced to:

(1) a term of probation not less than one nor more than five (5) years (Subchapter B, 18 U.S.C. §3561(c)); or,

(2) a $500,000 fine (Subchapter C, 18 U.S.C. §3571(c).

A sentence to pay a fine may be imposed in addition to a sentence to probation.

(b) An Order of Forfeiture as set forth in the "Forfeiture" section of this plea agreement, paragraphs 13-23, pp. 14-17, which sets forth GCC's acknowledgments, understandings, and agreements regarding forfeiture of:

(1) $1,875,407.12 seized from the GCC corporate bank account number xx-xx4434, at First Hawaiian Bank ("FHB 4434"), Dededo, Guam branch; and

(2) a money judgment of forfeiture against it in the amount of $1,875,407.12 in U.S. Currency.

(c) A $400 special assessment pursuant to 18 U.S.C. §3013(a)(2)(B). Defendant agrees to pay the special assessment at or before sentencing.

(d) Pursuant to the Mandatory Victim Restitution Act, the Court must order that the Defendant pay restitution to any victim of the offense of conviction, pursuant to 18 U.S.C. § 3663A.

(e) The United States agrees to recommend at sentencing that the Court impose a fine at the low end of the applicable guideline range, or $27,000.00.

**Voluntariness & Waiver of Trial Rights**

3. Defendant affirms that it has read this plea agreement and fully understands it.

2

Defendant acknowledges that it enters this plea agreement and that its decision to plead guilty voluntarily, and not because of any force, threats, promises or inducements, apart from the promises and inducements set forth in this plea agreement. It agrees to plead guilty because it is in fact guilty of the charged offense.

4. Defendant acknowledges that it understands that by entering a plea of guilty, it is waiving – that is, giving up – the following rights guaranteed to it by law and by the Constitution of the United States:

(a) the right to plead not guilty and to persist in a plea of not guilty;

(b) the right to a jury trial;

(c) the right to be represented by an attorney and, if necessary, to have the Court appoint counsel at trial and all stages of the proceedings;

(d) the right at trial to confront and cross-examine witnesses against it;

(e) the right to remain silent at trial, with such silence not being used against it in any way;

(f) the right, should it choose, to testify on its own behalf and to present evidence;

(g) the right to compel witnesses to appear at such a trial and to have them testify on its behalf;

Defendant understands that any statement it gives under oath in connection with this guilty plea may be used against it by the United States in a prosecution for perjury or false statement.

**Elements of the Offense & Factual Basis**

5. Defendant understands and agrees that to establish the offense of Conspiracy to

3

Commit Visa Fraud in violation of 18 U.S.C. § 371, the United States must prove each of the following elements beyond a reasonable doubt:

> <u>First</u>: On or about the dates alleged in the indictment, there was an agreement between two or more persons to commit the crime of visa fraud, as defined by 18 U.S.C. § 1546(a);

> <u>Second</u>: the defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it; and

> <u>Third</u>: one of the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy.

6. The United States and Defendant stipulate and agree to the following facts:

(a) Defendant was established in 1982 and is incorporated in Guam, a territory of the United States.

(b) GUAM CONSTRUCTION COMPANY ("Defendant GCC"), did business in Guam as a general contractor for the construction, repair and remodeling of various building structures and the improvement of real estate. (Guam Construction Company is sometimes referred to here as "GCC" and as "the company.")

(c) Byong Hee Kang ("B. Kang") was the company's president and treasurer. As the company's president, B. Kang ultimately made all the business decisions for Defendant GCC, including recruitment of alien workers, employee hiring, pay and designation and assignment of job duties.

(d) Choon H. Kang ("C. Kang) was the company's vice president.

(e) Antonia Bautista was the company's office manager and corporate secretary. She was employed with Defendant GCC since on or about 1994. Antonia Bautista started as an office secretary and was later promoted to office manager.

4

(f) During the period from 1995 until 2009 B. Kang in his capacity as Defendant GCC's president, petitioned for numerous alien workers from the Philippines and Korea under the H-2B nonimmigrant visa program. The majority of the workers were Philippine Nationals recruited and hired in the Philippines by B. Kang and Defendant GCC's Office Manager Antonia Bautista, using a Philippine employment service agency managed by two individuals. Additional H-2B workers from Korea were recruited by C. Kang and petitioned by B. Kang.

(g) Defendant GCC is engaged in the business of general contracting. Defendant GCC was awarded contracts from the federal and local governments as well as private contracts in the construction industry. Several foreign workers, who were petitioned by B. Kang under the H-2B program, confirmed that they worked other jobs for Defendant GCC not authorized by their H-2B visas. Several of these workers were recruited and hired by Defendant GCC based on their construction related specializations but fraudulently petitioned under other job categories. Once in Guam, several of these H-2B workers primarily worked in their specialized occupations or other undisclosed occupations for Defendant GCC and not in the job categories they were petitioned as, in violation of U.S. immigration law.

(h) Defendant GCC petitioned workers from the Philippines and South Korea to work for the company under the H-2B visa program. In the Philippines, Defendant GCC used an employment recruitment agency called Interworld Placement Agency (IPA), which was managed by V.G. and E.I., who are both Filipino Nationals, to recruit foreign construction workers from the Philippines to work in Guam for Defendant GCC. Defendant GCC also recruited foreign laborers from South Korea to work in Guam for the company. As Defendant GCC's vice president, C. Kang was responsible for the recruitment of Korean construction workers for the

5

company.

(i) C. Kang travelled to Korea and posted job advertisements for Defendant GCC using a Korean government employment agency which managed an employment website called Worldjobs. C. Kang interviewed and assisted job applicants and referred these job applicants to B. Kang for hiring. Although C. Kang was responsible for employee recruitment in Korea, all hiring decisions were made by B. Kang. Moreover, B. Kang was the petitioner and signatory official for all I-129 petitions used to sponsor foreign labor from the Philippines and South Korea to work in Guam under the H-2B visa program.

(j) Utilizing the H-2B visa program, Defendant GCC recruited, hired, and sponsored several foreign workers from the Philippines to work in Guam for Defendant GCC. B. Kang, assisted by V.G. and E.I., recruited and hired foreign workers in the Philippines for skilled positions, including, but not limited to, engineering, architecture, carpentry, electricians, and others. C. Kang recruited and hired alien workers in South Korea for similar skilled positions and other construction related occupations.

(k) When an alien job applicant was selected by Defendant GCC for a skilled position, Defendant GCC and/or IPA personnel told some of the applicants that there were no available visas for the jobs that they applied and were hired for. Instead, Defendant GCC and IPA personnel told some of the applicants that they would be petitioned into Guam under another job category utilizing the H-2B visa program.

(l) At various times, when a foreign applicant was selected for and accepted a position with Defendant GCC under their specialized skill(s), C. Kang, V.G., E.I and others with the knowledge and consent of B. Kang, instructed the workers to revise their job applications,

6

resumes, and other supporting employment documents to falsely match their petitioned occupations as listed on the I-129 Petition and reflected on the H-2B visa applications. Additionally, some the workers were told to obtain false employment certifications and were instructed to misrepresent their job qualifications during the visa interviews to create the false impression that they were skilled and qualified in their petitioned occupations.

(m) Defendant GCC applied for labor certifications through GDOL for specific construction-related jobs, primarily as a carpenter or plasterer, in connection with specific construction projects on Guam including the Guam International Airport Fence Project and various projects under the U.S. Air Force's "Simplified Acquisition of Base Engineer Requirements" (SABER) program, among others.

(n) Defendant GCC submitted several applications for labor certifications to request for multiple employees to be petitioned under the H-2B program. Defendant GCC's office manager Antonia Bautista, at the direction of B. Kang prepared the company's applications for labor certifications. B. Kang signed and certified the labor certification applications as Defendant GCC's president, and the company submitted the labor certification applications to the Government of Guam for approval.

(o) Upon approval of the GDOL labor certifications, Antonia Bautista, under the direction of B. Kang, prepared and filed with USCIS, the Form I-129's -- Petitions for Nonimmigrant Worker, and submitted the petitions, with supporting documents including labor certifications, applicant resumes, employment certification forms and other documents. At the time the aforementioned I-129 petitions and supporting documents were filed with USCIS, B. Kang had knowledge that the listed occupations of the workers were intentionally misrepresented

7

on the petitions in an effort to facilitate their entry into the U.S. by fraudulently obtaining H-2B visas. The workers were in fact petitioned, recruited, and hired by B. Kang specifically for their skills and qualifications in other undisclosed occupations not listed on the I-129 petitions, and were to be used by the company to work in those undisclosed job categories.

(p) After the H-2B workers arrived in Guam, B. Kang caused Defendant GCC to employ them in skilled occupations not authorized on their H-2B visas -- occupations including, but not limited to, electricians, engineers, architects, site managers, heavy equipment mechanics, heavy equipment operators, and others. Several H-2B workers worked for Defendant GCC in their specialized fields and not in the jobs authorized by their labor certifications, I-129 Petitions and H-2B visas. Defendant B. Kang tracked the actual skill sets of his H-2B workers by instructing his personnel to create detailed spreadsheets identifying the actual skilled construction trade of each H-2B worker. B. Kang and others used the spreadsheets for project scheduling and job assignments. Several H-2B workers petitioned by B. Kang worked jobs for Defendant GCC that would have entitled them to higher wages but the workers were instead paid based on their petitioned occupations, resulting in lower wage rates based on GDOL standards.

(q) After the H-2B workers arrived in Guam and began working for Defendant GCC, B. Kang filed I-129 petitions to extend the stay and employment several of workers on Guam. B. Kang signed and certified all the I-129 extension petitions, which were based on the workers' originally petitioned occupations, and not on the actual type of work they performed for GCC on Guam.

(r) It was further part of the conspiracy that Defendant GCC and its co-conspirators caused the following workers, among others, to be brought to Guam:

8

| Worker (initials) | Worker's Country of Citizenship | Worker's Actual Occupation/Skill |
|---|---|---|
| R.D.C. | Philippines | Civil engineer |
| R.L. | Philippines | Civil engineer |
| R.S. | Philippines | Civil engineer |
| C.K.L. | Korean | Civil engineer |
| A.G. | Philippines | Tile-setter and mason |
| E.V. | Philippines | Electrician |
| N.B. | Philippines | Carpenter |
| A.C. | Philippines | Civil engineer |
| R.R. | Philippines | Civil engineer |
| W.C. | Philippines | Mechanical engineer |
| P.A. | Philippines | Electrical engineer |
| K.H.L. | Korea | Heavy equipment mechanic |
| H.M. | Philippines | Carpenter and plumber |
| M.C. | Philippines | Carpenter/mason/painter |
| J.S. | Philippines | Mason |
| A.F. | Philippines | Mason |
| G.M. | Philippines | Architect (AutoCAD operator) |
| A.D. | Philippines | Carpenter |
| Worker (initials) | Worker's Country of Citizenship | Worker's Actual Occupation/Skill |
| K.S.L. | Korean | Construction manager and supervisor |
| N.A. | Philippines | Electrician |
| M.F. | Philippines | Electrician |
| I.T. | Philippines | Mason |
| R.M. | Philippines | Electrician |
| E.S. | Philippines | Electrician |
| M.G. | Philippines | Construction supervisor and mason |

(s)  It was further part of the conspiracy that Defendant GCC and its co-conspirators attempted to cause the following workers, among others, to be brought to Guam:

| Worker (initials) | Worker's Country of Citizenship | Worker's Actual Occupation/Skill |
|---|---|---|
| R.G. | Philippines | Civil engineer |
| D.T. | Philippines | Steelworker |

(t)  In furtherance of this conspiracy, and to effect its objectives, on or about the following dates, Defendant GCC and its co-conspirators performed and caused to be performed the following overt acts:

| No. | Date | Overt Act |
|---|---|---|
| 1 | November 18, 2004 | B. Kang signed and caused the filing of an I-129 petition |

9

| | | |
|---|---|---|
| | | (WAC-05-034-50584), prepared by Office Manager and submitted to USCIS, to allow R.D.C and R.L., both Philippine nationals and skilled engineers, to obtain H-2B visas to enter the U.S. as carpenters |
| 2 | October 21, 2005 | B. Kang signed and caused the filing of an I-129 petition (WAC-06-018-52169), prepared by Office Manager and submitted to USCIS, to allow D.T., a Philippine national and a skilled steelworker and N.A., a Philippine national and a skilled electrician, to obtain H-2B visas to enter the U.S. as plasterers |
| 3 | December 4, 2005 | B. Kang signed and caused the filing of an I-129 petition (WAC-06-019-52131), prepared by Office Manager and submitted to USCIS, to allow R.S ., a Philippine national and skilled engineer, to obtain an H-2B visa to enter Guam as a carpenter |
| 4 | November 13, 2006 | B. Kang signed and caused the filing of an I-129 petition (EAC-07-031-50061), prepared by Office Manager and submitted to USCIS, to allow E.S., a Philippine national and skilled electrician, to enter Guam using an H-2B carpenter visa |
| 5 | April 16, 2007 | C. Kang posted a job advertisement (Job Certificate #J20070416678) for a GCC construction machinery and mechanic position in a Korean job recruitment website named Worldjob. Based on the job advertisement, C. Kang recruited and hired K.H.L for the mechanic position but told K.H.L that there were no available mechanic visas so K.H.L would have to enter Guam with an H-2B carpenter visa |
| 6 | May 7, 2007 | B. Kang signed and caused the filing of an I-129 petition (WAC-07-160-53961), and submitted to USCIS, to allow C.K.L and G.W.L, both Korean nationals and skilled engineers and K.H.L., a Korean National and skilled mechanic, to obtain H-2B visas to enter Guam as carpenters |
| 7 | August 16, 2007 | B. Kang signed and caused the filing of an I-140, Petition for an Immigrant Worker (LIN0800256313), sponsoring R.S. as a carpenter |
| 8 | August 16, 2007 | B. Kang signed and caused the filing of an I-140, Petition for an Immigrant Worker (LIN0800753560), sponsoring R.D.C. as a carpenter |
| 9 | August 17, 2007 | C. Kang had K.H.L sign a GCC employment contract and accompanied K.H.L to the U.S. Embassy in Korea for the visa interview. On the same day, K.H.L was approved an H-2B carpenter visa |
| 10 | September 13, 2007 | B. Kang signed and caused the filing of an I-129 petition (WAC-07-269-51935), prepared by Office Manager and submitted to USCIS, to allow N.B., M.G., H.M., M.C., J.S., A.F., G.M., A.G., E.V., all being skilled in various construction related occupations, to enter the U.S. using H-2B plasterer visas |
| 11 | September 24, 2007 | B. Kang signed and caused the filing of an I-129 petition (WAC0727552335), prepared by Office Manager and submitted to USCIS, to allow N.A., a Philippine national and |

10

| | | skilled electrician, to extend his employment in Guam under an H-2B plasterer visa |
|---|---|---|
| 12 | May 23, 2008 | B. Kang signed and caused the filing of an I-129 petition (WAC-08-168-51670), prepared by Office Manager and submitted to USCIS, to allow R.R., W.C., P.A., R.G. and A.C ., all Philippine nationals and skilled engineers, to enter Guam with H-2B carpenter visas |
| 13 | May 23, 2008 | B. Kang signed and caused the filing of an I-129 petition (WAC-08-168-50792), prepared by Office Manager and submitted to USCIS, to allow A.D., N.A., M.F., I.T. and R.M., all being Philippine nationals and skilled in various construction related occupations, to enter the U.S. using H-2B plasterer visas |
| 14 | May 27, 2008 | B. Kang signed and caused the filing of an I-129 petition (WAC-08-168-50359), prepared by Office Manager and submitted to USCIS, to allow K.S.L., a Korean national and skilled construction supervisor, to obtain an H-2B visa to enter the U.S. as a carpenter |
| 15 | August 31, 2009 | B. Kang signed and caused the filing of an I-129 petition (WAC0923650821), prepared by Office Manager and submitted to USCIS, to allow K.S.L., a Korean national and skilled construction supervisor, to obtain an H-2B visa to enter the U.S. as carpenter |
| 16 | July 2010 | C. Kang threatened K.S.L, who B. KANG sent back to Korea because K.S.L was caught by GDOL working an unauthorized job in Guam, for requesting his overtime payment. C. Kang told K.S.L that she would hire someone in Korea to take that money back from him |

(u)  Through the GCC visa fraud scheme, $1,875,407.12 deposited in the Dededo, Guam branch, First Hawaiian Bank account number xx-xx4434 (hereinafter "FHB 4434") held in the name of GUAM CONSTRUCTION CO INC, constitutes, or is derived from or is traceable to proceeds obtained directly or indirectly from violations of 18 U.S.C. §1546(a) (Visa Fraud) or a conspiracy to commit such offense in violation of 18 U.S.C. §371.

(v)  The parties agree that this stipulated statement of facts is sufficient to support Defendant's guilty plea.  It is made for that limited purpose and does not contain all facts relating to the underlying criminal conduct.

11

**Sentencing Guidelines & Procedures**

7.  Defendant understands and acknowledges that:

(a) The Sentencing Guidelines apply in this case. In determining a sentence, the Court is obligated to calculate the applicable sentencing guideline range and to consider that range, possible departures or variances under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a);

(b) The United States will make its full discovery file available to the Probation Office for its use in preparing the presentence report;

(c) The Court will rely on the facts established in this case – including, but not limited to, the facts Defendant stipulates to in this plea agreement – in determining the applicable offense level and resulting guideline range;

(d) Sentencing discussions between Defendant and defense counsel or between defense counsel and the U.S. Attorney's Office are not part of this plea agreement, and Defendant is not relying on the possibility of any particular guideline range or sentence based on any such discussions;

(e) No promises or guarantees have been made to Defendant regarding either the guideline range or the sentence that will be imposed. The Court is not required to follow the Sentencing Guidelines or to accept any sentencing recommendations made by the United States or Defendant, and the Court may impose any sentence up to and including the maximum penalties set out above. Pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, if the Court does not accept a sentencing recommendation made by the United States, Defendant nevertheless has no right to withdraw its guilty plea.

12

(f) Defendant understands that an order of forfeiture will be entered by the court as a part of GCC's sentence and that such an order is mandatory.

## Cooperation

8. Defendant agrees to make a full, complete and truthful statement regarding its involvement in criminal conduct, as well as the involvement of all others known to it. Defendant agrees to testify fully and truthfully at any trials or hearings. Defendant understands that this plea agreement is not conditioned on the outcome of any trial. Defendant further understands, however, that this plea agreement is contingent on complete and truthful testimony by Defendant in response to questions asked by the Court, the prosecutor, or lawyers for any party.

9. If Defendant provides self-incriminating information as part of its cooperation regarding the unlawful activities of others, the United States agrees not to use such information against Defendant at its sentencing. Such information may be revealed to the Court but shall not be used against Defendant in determining Defendant's sentence range. There shall be no such restrictions on the use of information: (a) previously known to law enforcement agencies; (b) revealed to law enforcement agencies by, or discoverable through, an independent source; (c) in a prosecution for perjury or giving a false statement; or (d) in the event there is a material breach of this agreement by Defendant.

10. Defendant understands and agrees that its sentencing date may be continued by the Court until after the indictment and trial of others, so as to enable the United States and the Court to assess Defendant's cooperation.

## Agreements of the United States

11. The United States agrees to recommend that the Court, in determining Defendant's

13

sentencing guideline range, apply the maximum available reduction for acceptance of responsibility. This recommendation, however, is based on facts currently known to the United States and is contingent on Defendant accepting responsibility according to the factors set forth in § 3E1.1 of the Sentencing Guidelines. The United States is free to withdraw this recommendation if Defendant has previously engaged in any conduct which is unknown to the United States and is inconsistent with acceptance of responsibility, if Defendant does not fully perform under the forfeiture terms of this agreement, or if it engages in any conduct between the date of this plea agreement and the sentencing hearing which is inconsistent with acceptance of responsibility.

12. The United States agrees to recommend at sentencing that the Court impose a sentence at the low end of the applicable guideline range. If, however, the United States determines that Defendant has provided substantial assistance in the investigation or prosecution of another person, the United States agrees to move the Court at sentencing, pursuant to § 5K1.1 of the Sentencing Guidelines, to impose a sentence below the otherwise applicable sentencing guideline range. The determination of whether defendant has provided such substantial assistance rests entirely within the discretion of the United States Attorney's Office. Defendant acknowledges that even if the United States makes such a motion, the Court is not required to reduce Defendant's sentence.

## Forfeiture

13. The Defendant agrees to the immediate forfeiture of the $1,875,407.12 in U.S. Currency seized from GCC corporate bank account FHB 4434, Dededo, Guam branch on August 1, 2014 as proceeds from and/or involved in the offense of conviction, the visa fraud, a violation

14

of 18 U.S.C. § 1546, and subject to forfeiture pursuant to 18 U.S.C. § 982(a)(6)(a). Furthermore, the Defendant consents to the immediate entry of a preliminary order of forfeiture as to said $1,875,407.12. The Defendant has an interest in its corporate bank account FHB 4434; and such property constitutes, or was proceeds the Defendant obtained, directly or indirectly, as a result of the visa fraud charged in the Superseding Indictment.

14. Defendant does hereby, forfeit, release, and/or transfer all interests in the property described above, and agrees to take all steps deemed necessary by the United States Attorney to ensure that clear title, ownership, and possession vests in the United States of America, including, but not limited to, the signing of all instruments necessary to pass title, the approval and signing of any stipulation for judgment or consent decree of forfeiture, and of any other documents necessary to effectuate such transfers and vest clear title in the Government.

15. The Defendant agrees to forfeit all interests to the $1,875,407.12 in U.S. Currency seized from the Defendant's GCC corporate bank account FHB 4434. With respect to any asset which the Defendant has agreed to forfeit, the Defendant waives any constitutional and statutory challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this plea agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment under the Eighth Amendment to the United States Constitution.

16. To the extent that the Defendant has entered into any agreement with others for the purpose of transferring assets or dividing assets obtained during the course of the visa fraud conspiracy, the Defendant agrees that any such agreements shall be without effect for the purpose of determining that those assets are subject to forfeiture or restitution remedies.

15

17. To the extent that the Defendant has entered into any other agreement for the purpose of transferring assets or dividing assets obtained during the course of its visa fraud scheme, the defendant agrees that any such agreements shall be without effect for the purpose of determining what portion of the property that is the subject of those agreements is subject to forfeiture or restitution remedies.

18. The Defendant agrees to take all steps as requested by the United States, including executing documents needed to pass clear title to forfeitable assets above mentioned in paragraph 13 to the United States. If called upon to do so by the Government, the Defendant agrees to testify truthfully in any judicial forfeiture proceeding regarding forfeiture matters, including any proceedings regarding any third-party claims as to property subject to forfeiture in this matter.

19. The Defendant further agrees to waive all interest in any of the above-described assets in any judicial forfeiture proceeding. The Defendant agrees to consent to the immediate entry of orders of forfeiture for such property and waives the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. The Defendant acknowledges that it understands that the forfeiture of assets is part of the sentence that may be imposed in this case and waives any failure by the court to advise it of this, pursuant to Rule 11(b)(1)(J), at the time it's guilty plea is accepted or at sentencing.

20. The Defendant further agrees to waive all constitutional and statutory challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this plea agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment.

16

21. The Defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive GCC, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement or GCC's existence as a corporation. The forfeitability of any particular property pursuant to this agreement shall be determined as if Defendant had survived, or that GCC has not dissolved, and that determination shall be binding upon Defendant's heirs, successors and assigns until the agreed forfeiture, including any agreed money judgment amount, is collected in full.

22. The Defendant understands that its failure to perform the obligations relating to forfeiture void this Plea Agreement in its entirety at the option of the Government.

### Financial Disclosure Obligations

23. Defendant agrees to submit to the U.S. Attorney's Office, within three weeks of the execution of this plea agreement, a complete, accurate and truthful financial statement and accompanying releases, in a form it provides and as it directs. Defendant agrees to disclose all assets in which it has any interest or over which it exercises control, directly or indirectly, including those held by a spouse, nominee or other third party. Defendant authorizes the U.S. Attorney's Office to obtain a credit report on it to evaluate its ability to satisfy any financial obligation imposed by the Court.

24. Defendant understands and agrees that any monetary penalties imposed by the Court will be due and payable immediately and subject to immediate enforcement by the United States, pursuant to 18 U.S.C. § 3613. Defendant understands that, by law, interest accrues on any remaining balance of the debt. Defendant agrees not to dissipate assets. If Defendant is financially unable to immediately pay any monetary penalties in full, Defendant agrees: (a) to

17

cooperate with the United States Attorney's Office; (b) to provide updated financial statements upon request by the United States Attorney's Office and to keep the office advised about Defendant's current address; and (c) for its debt to be placed on the Treasury Offset Program and any tax refund/rebate offset program existing in its of incorporation. Defendant understands that any funds captured by an offset program will be paid towards its monetary penalties, but does not relieve it of its obligation to pay the monetary penalties in full.

### Consequences of Breach

25. Defendant agrees that if it is deemed by the Court to be in material breach of any of its obligations under this agreement: (a) Defendant shall not be entitled to withdraw its plea of guilty made in connection with this agreement; (b) the United States may, in its discretion and at its option, declare null and void any of its obligations under this agreement; and (c) the United States may recommend whatever sentence it may deem appropriate. The issue of whether Defendant is in material breach of this agreement shall be determined by the Court in a proceeding at which the United States shall be required to establish breach by a preponderance of the evidence. Defendant understands and agrees that the Federal Rules of Evidence shall not apply at any such hearing, and that the United States may rely at the hearing on any statements or evidence Defendant may have given during cooperation with law enforcement.

### Waiver of Post-Sentencing Rights

26. Defendant voluntarily, knowingly and intelligently waives any right to appeal or to collaterally attack any aspect of its conviction or sentence including, but not limited to, any pretrial dispositions of motions and other issues. Defendant acknowledges and agrees that this waiver shall result in the dismissal of any appeal or collateral attack Defendant might file

18

challenging its conviction or sentence in this case, other than an attack based on alleged ineffective assistance of counsel, alleged involuntariness of the Defendant's guilty plea, or alleged prosecutorial misconduct.

### Consequences of Withdrawal of Guilty Plea or Vacating of Conviction

27. Defendant agrees that if it is allowed to withdraw its guilty plea or if any conviction entered pursuant to this agreement is vacated or rendered invalid for any reason, the Court shall, at the request of the United States, reinstate any charges that were dismissed as part of this agreement. Defendant also agrees that within six months after the date the order vacating or invalidating Defendant's conviction or allowing it to withdraw its guilty plea becomes final, the United States may file additional charges against Defendant relating directly or indirectly to the conduct underlying the guilty plea. Defendant waives its right to challenge any such additional charges on the ground that they were not filed in a timely manner, including any claim that they were filed after the limitations period expired.

### Completeness and Effect

28. Nothing in this plea agreement shall bind any federal, state or local districts, jurisdiction or law enforcement agency, other than the United States Attorney for the Districts of Guam and the Northern Mariana Islands.

29. Defendant acknowledges that this is the only plea agreement in this. This plea agreement cannot be modified other than by a writing signed by all parties, or by a modification acknowledged by all parties on the record in Court.

//

//

19

30. Defendant waives any claim under the Hyde Amendment, 18 U.S.C. § 3006A (Statutory Note), for attorney's fees and other litigation expenses arising out of the investigation or prosecution of this matter.

DATED: _____

GUAM CONSTRUCTION COMPANY
Defendant
Print name of Signor: _____

DATED: 8\8\16

JAMES MAHER
Attorney for Defendant

ALICIA A.G. LIMTIACO
United States Attorney
Districts of Guam and the Northern Mariana Islands

DATED: 8/8/16

STEPHEN F. LEON GUERRERO
Assistant U.S. Attorney

DATED: 8/8/16

BELINDA ALCANTARA
Assistant U.S. Attorney

20